UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FISHER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDDIE BAUER LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:  19cv857 JM (WVG)<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Defendant Eddie Bauer, LLC ("Eddie Bauer") moves to dismiss the Complaint of Plaintiff Jackie Fisher ("Fisher") pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). (Doc. No. 7.)  The motion has been fully briefed and the court finds it suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

**I.     BACKGROUND**

Fisher states that on or about December 22, 2018, he visited the Eddie Bauer outlet store in Alpine, California and examined a "Radiator Fleece ¼-zip and a Thermal ¼-zip" ("the items"). (Compl. at 5.) He saw signage advertising the items as 50 percent off. (*Id.*) The items' price tags read $24.99 and $27.50, respectively. (*Id.*)  He purchased the items for a total of $56.56 "[b]ecause he liked the items and felt that the discounted price would likely not last, and that he was getting a significant bargain on the merchandise." (*Id.*)  At

1

the time of his purchase, he "believed that he was purchasing authentic Eddie Bauer merchandise that was previously available at the Eddie Bauer retail store or other department stores and that it had been sold at the reference prices."[1]  (*Id.*)

With respect to Eddie Bauer's conduct, Fisher alleges that Eddie Bauer engaged in a "fraudulent price scheme" by putting false reference prices on the price tags of "almost all" of the merchandise at its outlet "stores."  (*Id*. at 2-3, 7-9.)  As an example, Fisher attaches two photographs to his Complaint showing a small 50 percent off sign above a rack of shirts, as well as a photograph of a $59.99 Eddie Bauer price tag for one of the shirts.[2]  (Doc. No. 1-3.)  Fisher further alleges that Eddie Bauer's "direct to outlet" merchandise is sold "exclusively" at its outlet stores and is "never" sold "anywhere" at the reference prices on the price tags.[3]  (Compl. at 3, 5-7.)  Fisher claims the two items he purchased were "direct to outlet."  (*Id*. at 5.)  In support of these allegations, Fisher states:

> Plaintiff's investigation of Eddie Bauer revealed that Eddie Bauer "direct to outlet" store merchandise is priced uniformly.  That is, Eddie Bauer

---

[1] Fisher refers to the prices on the items' price tags as "reference prices."  As explained in his Complaint, "reference prices" are non-discounted regular, original or former prices.  (Compl. at 2.)  In his Complaint, however, Fisher mistakenly refers to the prices he paid for the items – $24.99 and $27.50 – as reference prices.  (*Id*. at 5.)  In his opposition to Eddie Bauer's motion, Fisher clarifies that the references prices on the price tags of the items he purchased were actually $49.99 and $54.99 and that $24.99 and $27.50 were the prices he paid after applying the 50 percent discount. (Doc. No. 9 at 8 n.1.)  Although the Complaint contains no reference to the $49.99 and $54.99 reference prices, Fisher pleads that he purchased the items for a total of $56.56 at a 50 percent discount.  (Compl. at 5.)  Therefore, despite Fisher's error, the correct reference prices can be reasonably inferred from the Complaint.

[2] The sign and shirts in the photographs do not appear to be (and Fisher does not allege they are) the signs Fisher saw or the items Fisher purchased.

[3] Although Fisher states that his claims apply only to "direct to outlet" merchandise, he also claims "[t]he fraudulent pricing scheme applies to all Eddie Bauer outlet store merchandise offered on sale at the Eddie Bauer outlet store." (Compl. at 7, 9.)  He acknowledges, however, that Eddie Bauer outlet stores sell "some merchandise that was originally offered for sale in its full line stores."  (*Id*. at 3 n.2.)

2

>merchandise sold at Eddie Bauer's outlet stores bears a price tag with a false reference price and a substantially discounted "__% Off" sale price. Plaintiff's counsel's investigation confirmed that the merchandise purchased by Mr. Fisher was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiff's purchase.
>
>Plaintiff's investigation cataloged the pricing practices of Eddie Bauer's outlet store located at the Viejas Outlet Center, 5001 Willows Road, Space J101, Alpine, CA 91901 ("Alpine"), for several months before and after Mr. Fisher's purchase. The false reference price and corresponding discount price scheme was both uniform and identical on almost all of the merchandise sold at Eddie Bauer's outlet stores. The only thing that changed was the requisite % Off on certain merchandise items.
>
>The fraudulent pricing scheme applies to all Eddie Bauer outlet store merchandise offered on sale at the Eddie Bauer outlet store, including the Radiator Fleece and Thermal purchased by Plaintiff.

(*Id.* at 8-9.)

Fisher now brings a putative class action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). (*Id.* at 4.) He seeks to represent a statewide class consisting of "[a]ll persons, within the State of California, from May 7, 2015 through the present . . . . who purchased from Eddie Bauer outlet stores one or more 'direct to outlet' products at discounts from the advertised 'reference' price and who have not received a refund or credit for their purchase(s)." (*Id.* at 10.) Fisher asserts claims under California's false advertising law ("the FAL"), CAL. BUS. & PROF. CODE §§ 17500-501, unfair competition law ("the UCL"), *id*. § 17200, and Consumers Legal Remedies Act ("the CLRA"), CAL. CIV. CODE. §§ 1750-1785. The FAL provides that "[n]o prices shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . . within three months next immediately preceding the publication of the advertisement[.]" CAL. BUS. & PROF. CODE § 17501. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id*. § 17200. The CLRA prohibits "unfair methods of competition and unfair or deceptive

3

acts or practices." CAL. CIV. CODE. § 1770.  The CLRA also specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* § 1770(a)(9), (13).

On July 1, 2019, Eddie Bauer moved to dismiss the Complaint. (Doc. No. 7.)  Fisher filed an opposition to the motion on July 29, 2019, (Doc. No. 9), and Eddie Bauer filed its reply on August 5, 2019, (Doc. No. 10).

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings.  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  To satisfy Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. *Id.* at 678-79.  The court must accept as true the facts alleged in a well-pled complaint, but mere legal conclusions are not entitled to an assumption of truth. *Id.*  The court must construe the pleading in the light most favorable to the non-moving party. *Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004).  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 8(a)(2) requires claims for relief to contain "a short and plain statement of the

4

claim showing that the pleader is entitled to relief." Even under the liberal pleading standard of Rule 8(a)(2), a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). Rule 8(e) also requires courts to construe pleadings "so as to do justice."

If a plaintiff alleges fraud, Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud." To plead fraud with particularity, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and alterations omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs[.]'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *In re Stac Elec. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir. 1996)). The Ninth Circuit has held that the heightened pleading requirement of Rule 9(b) applies to claims brought under the FAL, UCL, or CLRA that are "grounded in fraud." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Rule 9(b) may be "relaxed," however, "as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) A pleading is sufficient under Rule 9(b) "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Id.* Rule 9(b) requires only that "plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha*, 62 F.3d at 1503 ("[I]n cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant.").

## III. DISCUSSION

Eddie Bauer moves to dismiss Fisher's Complaint on the ground that Fisher fails to satisfy Rule 9(b) because he does not plead facts demonstrating that Eddie Bauer's pricing is deceptive.[4] (Doc. No. 7-1 at 7, 10-11.) Rule 9(b) applies here because Fisher specifically and repeatedly alleges that Eddie Bauer engaged in a fraudulent pricing scheme in violation of the FAL, UCL and CLRA. (Compl. at 2, 6, 9, 12, 13-16); *Davidson*, 889 F.3d at 964; *see also Chase v. Hobby Lobby Stores*, *Inc.*, Case No. 17cv881 GPC (BLM), 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("The heightened pleading standard applies to claims under the CLRA, UCL, and FAL.") Fisher also concedes that the heightened pleading standard applies. (Doc. No. 9 at 10.)

Eddie Bauer argues that Fisher has not satisfied Rule 9(b) because he: (1) "has not plead a single fact to support his claim that Eddie Bauer's outlet pricing is deceptive;" (2) "relies on conclusory allegations based on an undisclosed investigation by Plaintiff's counsel;" (3) "has attempted to state a claim by pointing at a price tag and declaring it false, without any factual support;" and (4) "does not offer any details as to what [his] investigation entailed." (Doc. No. 7-1 at 7, 9.) Eddie Bauer also argues that if Fisher "were correct that he can state a claim this way, then retailers could never offer sales without the risk of a lawsuit." (Doc. No. 10 at 5.)

In opposition, Fisher maintains that he satisfied Rule 9(b) by pleading that his investigation "revealed that Defendant's 'direct to outlet' merchandise was perpetually offered at a substantially discounted price, and well over 90 days at a time." (Doc. No. 9 at 16.) Fisher argues that he "alleged precisely how Defendant's 'reference' prices are deceptive and false – because they were not in fact Defendant's price, nor were they the

---

[4] Eddie Bauer's motion to dismiss relies on Rule 9(b) and makes only passing reference to Rules 8 and 12(b)(6). (*See* Doc. No. 7-1.) The court's decision here also relies on Rule 9(b). Accordingly, the court's analysis focuses on Rule 9(b) rather than Rules 8 and 12(b)(6).

prevailing market prices or the 'market' price within the ninety (90) days preceding Plaintiff's purchase." (*Id*. at 7.)  Fisher further states, "[i]f Defendant would like to challenge Plaintiff's counsel's investigation (or, more importantly, the results of that investigation), it is free to do so at a later stage." (*Id.* at 8.)

The Ninth Circuit has yet to decisively address the level of factual detail required under Rule 9(b) to sufficiently plead similar claims brought under the FAL, UCL and CLRA.  In *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017), the court found it sufficient to plead that two items of clothing the plaintiff purchased at an outlet store were not being sold "in the area" by either the defendant or other merchants for the higher "compared to" price listed on the price tags.  The complaint also alleged that the defendant was not "reasonably certain" that the items were being sold in the area at the time. *Id*.  The court applied a "relaxed" Rule 9(b) standard, noting that the plaintiff could not reasonably be expected to have detailed personal knowledge of the defendant's internal pricing policies for its outlet stores.  687 F. App'x at 568; *see also Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019) (denying motion to dismiss on similar grounds).

In contrast, in *Sperling v. DSWC, Inc.*, 699 F. App'x 654 (9th Cir. 2017), the court found it insufficient to plead that two pairs of shoes purchased at an outlet store were never sold at the higher "compare at" prices listed on the price tags.  699 F. App'x at 655.  The store's website disclaimed that the "compare at" prices were the manufacturers' suggested retail prices (MSRPs).  *Sperling v. DSW, Inc.*, Case No. 15cv1366 JGB (SPX), 2016 WL 354319, at *2 (C.D. Cal. Jan. 28, 2016) (lower court decision).  The complaint also stated that an "independent investigation" by the plaintiff "revealed" that the prevailing market price for the shoes was less than the listed "compare at" price and the investigation was "unable to find any retail outlet selling identical shoes" at the "compare at" price.  2016 WL 354319, at *3.  The Ninth Circuit found these facts insufficient because (1) MSRPs on price tags are not "inherently false or deceptive" and (2) the plaintiff did not state when she conducted her search for the products.  699 F. App'x at 655.

Since *Rubenstein* and *Sperling*, district courts have reached different conclusions on the level of factual detail required in cases alleging that products were never sold at the reference prices advertised on their price tags. Some claims have survived motions to dismiss.[5] Others have not.[6]

### A. "Almost All" Merchandise at Eddie Bauer Outlet Stores

The gravamen of Fisher's Complaint is that Eddie Bauer engaged in a "fraudulent pricing scheme" in which Eddie Bauer put false reference prices on the price tags of "almost all" of the merchandise at its outlet "stores," (Compl. at 2-3, 7-9), and in which Eddie Bauer's "direct to outlet" merchandise is sold "exclusively" at its outlet stores and is "never" sold "anywhere" at the reference prices on the price tags, (*id*. at 3, 5-7). These

---

[5] *See Safransky v. Fossil Grp., Inc.*, Case No. 17cv1865 MMA (NLS), 2018 WL 1726620, at *10-13 (S.D. Cal. Apr. 9, 2018); *John v. AM Retail Grp., Inc.*, Case No. 17cv727 JAH (BGS), 2018 WL 1400718, at *7 (S.D. Cal. Mar. 20, 2018) (finding the "who, what, when, where, and how" standard of Rule 9(b) is satisfied by pleading: (1) the date of purchase; (2) the store; (3) a description of the product purchased; (4) a description of the advertising; and (5) pictures depicting the products and advertisements); *Chase v. Hobby Lobby Stores, Inc.*, Case No. 17cv881 (GPC) BLM, 2018 WL 786743, at *4-5 (S.D. Cal. Feb. 8, 2018) (finding it plausible that a reasonable consumer could have been misled because the consumer would not notice a disclaimer noting that the product always remained discounted); *Covell v. Nine W. Holdings, Inc.*, Case No. 17cv0137 H (JLB), 2018 WL 558976, at *4 (S.D. Cal. Jan. 25, 2018) (applying a relaxed Rule 9(b) standard).

[6] *See Park v. Cole Haan, LLC*, Case No. 17cv1422 LAB (BGS), 2019 WL 1200337, at *4-5 (S.D. Cal. Mar. 13, 2019) ("*Park II*") (granting motion to dismiss all claims except those based on the pair of shoes the plaintiff purchased); *Seegert v. Luxottica Retail N. Am., Inc.*, Case No. 17cv1372 JM (BLM), 2018 WL 3472561, at *3-4 (S.D. Cal. July 19, 2018) ("*Seegert II*"); *Park v. Cole Haan*, LLC, Case No. 17cv1422 LAB (BGS), 2018 WL 3438693, at *4-5 (S.D. Cal. July 17, 2018) ("*Park I*") (granting a motion to dismiss under Rule 12(b)(6) because, *inter alia*, the plaintiff provided "no facts suggesting what representations, if any, Defendants are making to customers about products sold in the outlet, nor how many products sold in the outlet fall in this category"); *Seegert v. Luxottica Retail N. Am., Inc.*, Case No. 17cv1372 JM (BLM), 2018 WL 1214888, at *3 (S.D. Cal. Feb. 23, 2018) ("*Seegert I*").

assertions are conclusory allegations, not facts. *See Seegert II*, 2018 WL 3472561, at *3-4; *but cf. Covell*, 2018 WL 558976, at *4 (finding that plaintiff's assertion that the merchandise was never sold anywhere at the suggested retail price was a "specific fact" that the court was required to accept as true). The only facts Fisher pleads to support his allegations of a fraudulent pricing scheme consist entirely of the following: an investigation conducted by Fisher's counsel "cataloged pricing practices" at the Eddie Bauer outlet store in Alpine, California for several months before and after Fisher's purchase on or about December 22, 2018, and the only thing that changed was the percentage discount on "certain merchandise." (Compl. at 8-9.) The only products that Fisher specifies were included in the investigation are the two items he purchased. He claims the investigation confirmed "the merchandise purchased by Mr. Fisher was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding [Fisher's] purchase." (*Id.*)

The fact that two products remained on sale for at least 90 days does not provide sufficient support for his allegation of a fraudulent pricing scheme involving almost all of the merchandise at Eddie Bauer outlet stores. Except for the single store from which he purchased the items, Fisher does not identify any of the Eddie Bauer "stores" allegedly participating in the scheme. Nor does Fisher allege that he searched Eddie Bauer's website, other Eddie Bauer stores, Eddie Bauer paper catalogues, or any department store selling Eddie Bauer products. (*See id*. at 5 (claiming he believed he was purchasing merchandise that was previously available at a retail store or other department store).) Fisher does not even allege that he searched online or that he inquired directly with Eddie Bauer. *See Park II*, 2019 WL 1200337, at *4 (noting the plaintiff's failure to either inquire with store employees or allege they did not or would not answer truthfully); First Amended Complaint at 7, *Park v. Cole Haan, LLC*, Case No. 17cv1422 LAB (BGS) (S.D. Cal. Aug. 13, 2018), Doc. No. 17 (noting that the plaintiff conducted an internet search).

As this court previously stated in a similar case, it is "virtually inconceivable" that Fisher would not have made "[s]uch a straight-forward effort [that] would not have

required the commencement of formal discovery . . . . and would provide particular facts to support or negate Plaintiff's central claim that [the defendant] never sells [the purportedly discounted product] at the original price." *Seegert II*, 2018 WL 3472561, at *4. As this court also previously stated, Rule 9(b) "requires a plaintiff to conduct a pre-complaint investigation 'in sufficient depth to assure that the charge of fraud is responsible and supported.'" *Id*. at *3 (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see also Jacobo v. Ross Stores, Inc.*, Case No. 15cv4701 MWF (AGR), 2016 WL 3482041, at *3 (C.D. Cal. Feb. 23, 2016) ("Plaintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their 'belief' that the 'Compare At' prices were inaccurate."); *but cf. Safransky*, 2018 WL 1726620, at *12 (noting that the plaintiff was not required to conduct a pre-suit investigation or include the result of an investigation "in every case").[7]

Fisher's investigation falls short of a straight-forward and responsible effort to support his broad claim of a fraudulent pricing scheme. In *Pickles v. Kate Spade & Co.*, for example, the plaintiff conducted an investigation including "internet comparative and archival research, Kate Spade corporate documents, and interviews with current and former

---

[7] This court has also previously found it insufficient for the plaintiff to allege that an "extensive" investigation was conducted without identifying *any* of the products or stores investigated. *Rael v. Dooney & Bourke, Inc.*, Case No. 16cv371 JM (DHB), 2016 WL 3952219, at *3-5 (S.D. Cal. July 22, 2016). Two of the cases cited by this court in that decision, however, have been reversed. *See Davidson*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014) ("It is not enough for [plaintiff] to simply claim that [an advertisement] is false – she must allege facts showing *why* it is false."), *rev'd*, 889 F.3d 956, 965 (9th Cir. 2018) (finding "the why" under Rule 9(b) was satisfied by pleading that products advertised as "flushable" did not "disperse and disintegrate within seconds or minutes"); *Rubenstein*, Case No. 14cv7155 SJO (JPRx), 2015 WL 1841254 (C.D. Cal. Mar. 2, 2015), *rev'd*, 687 F. App'x 564 (9th Cir. 2017). While these cases are now more favorable to Fisher's position, they are not so favorable as to persuade this court that the minimal facts pled by Fisher are sufficient to support his broader allegation of a fraudulent pricing scheme.

Kate Spade employees." Case No. 15cv5329 VC, 2016 WL 3999531, at *1 (N.D. Cal. July 26, 2016). The plaintiff also alleged that Kate Spade "direct to outlet" merchandise could be identified by a unique product code number and attached examples to the complaint. (*Id.*) Here, in addition to failing to search anywhere except a single store, Fisher does not explain how he knew the items he purchased were "direct to outlet" or how Eddie Bauer "direct to outlet" items can be identified. *See also Safransky*, 2018 WL 1726620, at *2 (noting that the allegedly "direct to outlet" products were subtly marked as "like style").

Additionally, in *Dennis v. Ralph Lauren Corp.*, the court initially found it insufficient to plead that the plaintiff's counsel investigated "various retail stores" and "various consumer goods" because the only store specifically identified was the outlet store from which the plaintiff made a purchase. 2016 WL 7387356, at *4 (S.D. Cal. Dec. 20, 2016). The court subsequently found an amended complaint sufficient because it specified that the investigation included all four stores in San Diego County, as well as two other stores, that sold the defendant's products. 2017 WL 3732103, at *2 (S.D. Cal. Aug. 29, 2017).[8] The court in *Dennis* also noted that the complaint included "a chart detailing the particular items that were included in the investigation, the particular stores where those items were offered for sale, the advertised 'Our Price' price for each item, the advertised discount for each item, and the dates on which the prices were recorded and verified." *Id.* at *4. Fisher does not plead an equivalent level of factual detail here.

Overall, the particular facts pled by Fisher regarding two products purchased at a single store are insufficient to support his broader allegation of a fraudulent pricing scheme involving almost all merchandise at Eddie Bauer outlet stores. Indeed, none of the cases decided since *Rubenstein* and *Sperling* included an acknowledgment, as Fisher provides here, that the plaintiff's pre-complaint investigation included only two products at one

---

[8] This second order in *Dennis* was issued after *Rubenstein*, but before *Sperling*. *See Rubenstein*, 687 F. App'x 564 (filed April 18, 2017); *Sperling*, 2016 WL 354319 (filed October 19, 2017).

11

store.[9] While Fisher may be entitled to a relaxation of the heightened standard for pleading fraud under Rule 9(b) because he cannot reasonably be expected to have access to the full extent of Eddie Bauer's outlet store pricing practices, *see Rubenstein*, 687 F. App'x 567-68 (citing *Moore*, 885 F.2d at 540), the standard is still a heightened one. *See Seegert II*, 2018 WL 3472561, at *4 (rejecting that *Rubenstein* and *Moore* provide compelling support for discovery); *see also Jacobo*, 2016 WL 3482041, at *4-5 (rejecting allegations based "on information and belief" when the supporting facts were easily available to the plaintiff, such as the availability of the products in other stores). To allow such narrow facts to support such a broad allegation would require the relaxation of Rule 9(b) to the point of its incapacitation.

### B. The Items Fisher Purchased

Although the facts pled by Fisher are insufficient to support his broader allegation of a fraudulent pricing scheme involving unspecified products and stores, they are sufficient to support a claim with respect to the specific two items he purchased. As noted above, Fisher offers some minimal specificity in that his counsel "cataloged" prices at a

---

[9] *See* Third Amended Class Action Complaint at 10-14, *Nunez v. Saks Inc.*, Case No. 15cv2717 JAH (WVG) (S.D. Cal. June 15, 2017), Doc. No. 36-2 (specifying two stores and 22 products); First Amended Complaint at 7, *Park v. Cole Hann, LLC*, Case No. 17cv1422 LAB (BGS) (S.D. Cal. Aug. 13, 2018), Doc. No. 17 (noting that the plaintiff searched online); First Amended Class Action Complaint at 10, 14-15, *Safransky v. Fossil Grp., Inc.*, Case No. 17cv1865 MMA (NLS), 2018 WL 1726620 (S.D. Cal. Oct. 23, 2018), Doc. No. 8 (not specifying the stores or products included in the investigation); First Amended Class Action Complaint at 9-10, *John v. AM Retail Grp., Inc.*, Case No. 17cv727 JAH (BGS), 2018 WL 1400718 (S.D. Cal. June 15, 2017), Doc. No. 7 (specifying four stores and 14 products); First Amended Class Action Complaint at 10-13, *Chase v. Hobby Lobby Stores, Inc.*, Case No. 17cv881 GPC (BLM), 2018 WL 786743 (S.D. Cal. Nov. 1, 2017), Doc. No. 16 (specifying three stores and 12 products); First Amended Class Action Complaint at 10-12, *Covell v. Nine W. Holdings, Inc.*, Case No. 17cv1371 H (JLB), 2018 WL 558976 (S.D. Cal. Oct. 31, 2017), Doc. No. 10 (specifying two stores and 11 products).

particular outlet store for several months before and after[10] the date he purchased the items and he confirmed the items' prices remained advertised as discounted for at least 90 days immediately preceding the purchase on December 22, 2018. (Compl. at 8-9.)  While Fisher provides no particularity as to what "cataloging" prices entailed, when viewed in the light most favorable to Fisher, the cataloguing of prices in this context presumably entails visiting the store on a reasonably regular basis and personally observing and recording the prices of the two items.  The fact that the items remained on sale for a substantial period of time sufficiently supports, albeit ever so slightly, the plausibility and particularity of his claim that the two items were never sold at the reference price, and therefore the publication of the reference price on the price tags was deceptive.[11]  *Park II*, 2019 WL 1200337, at *2 (noting that labeling products as discounted when they have never actually been sold at the higher price can violate the FAL, UCL and CLRA) (citations omitted).  While it might be reasonable for retail stores to genuinely discount products for several months at a time, the questions of whether the items were genuinely discounted, or whether advertising them as discounted for so long violates the FAL, UCL or CLRA, are questions best left to a trier of fact.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts . . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").  In the meantime, Eddie Bauer has adequate notice of an allegation against which it must defend, i.e. that it never sold the "Radiator Fleece ¼-zip" or "Thermal ¼-zip" for $49.99 and $54.99, respectively, and that advertising these two items as discounted for a period of at least 90 days violates the FAL,

---

[10] Fisher does not specify whether he cataloged the prices for several months *both* before and after he made the purchase.

[11] Eddie Bauer does not argue that its outlet stores in California operated independently in pricing and advertising their products.  The fact that the items remained on sale for so long at one store adds to the plausibility, perhaps minimally so, that they were similarly priced at other outlet stores.

UCL and CLRA. Based on the foregoing, Fisher pleads sufficient facts on behalf of himself and all others who purchased the same items, advertised in the same manner, from a California Eddie Bauer outlet store during the several months before and after Mr. Fisher's purchase on or about December 22, 2018[12] and who have not received a refund or credit for their purchase.

## IV.  CONCLUSION

For the foregoing reasons, Eddie Bauer's Motion to Dismiss Plaintiff's Complaint is **GRANTED IN PART** and **DENIED IN PART**. With respect to Fisher's claim of a fraudulent pricing scheme involving almost all merchandise at Eddie Bauer outlet stores, the motion is **GRANTED**. With respect to the two items Fisher purchased, the motion is **DENIED**. Consistent with Rule 15 and this court's previous decisions in similar cases, the court grants Fisher leave to file an amended complaint within 20 days from the date of entry of this order.

IT IS SO ORDERED.

DATED: October 18, 2019

JEFFREY T. MILLER
United States District Judge

---

[12] Fisher references May 7, 2015 to the present as the class period, (Compl. at 10), but does not explain why that date represents the beginning of the class period.